## ANDREW P. VALENTINE *et al. versus* The City of BOSTON.

An appeal does not lie from the judgment of the Court of Common Pleas upon the verdict of a jury empannelled to assess the damages sustained by the owner of land in the city of Boston, in consequence of a highway being laid out over the land.

THIS was a complaint to the Court of Common Pleas, at October term 1834, representing that the complainants were owners in common of a parcel of land in Boston, and that the city, by its officers, the mayor and aldermen, on October 23, 1833, took from the complainants a part of the land, to wit, 1846 square feet, and that the city had refused and neglected to make them a suitable indemnity or compensation for the injury sustained by them ; and praying that a jury might be empannelled to assess the damages. The complaint had relation to land over which the city had laid out a highway. At the April term 1837, an order of notice was directed to be served upon the city, and at a subsequent term the city appeared and pleaded not guilty. A trial was thereupon had, and the jury found that the city was guilty of taking 1472 feet of the complainants' land, for which the jury assessed the damages at $1277·68, and was not guilty of taking the remaining 374 feet of land, as alleged in the complaint, because the same was a part of a town way.

The complainants claimed an appeal from the Common Pleas to this Court, and the city solicitor filed a motion that the appeal might be dismissed.

The case was argued in writing.

*J. Pickering*, city solicitor, in support of the motion, cited *Weatherbee v. Johnson*, 14 Mass. R. 420 ; *Lovell v. Spring*, 6 Mass. R. 398 ; 6 Dane's Abr. 446 ; *Wood v. Ross*, 11 Mass. R. 271, 274; *St.* 1820, c. 79, § 3 ; Revised Stat. c. 82, § 6 ; *Mountford v. Hall*, 1 Mass. R. 443 ; *Pierce v. Oliver*, 13 Mass. R. 211 ; *Smith v. Hubbard*, 11 Mass. R. 24 ; *Nantucket v. Cotton*, 14 Mass. R. 243 ; *Gile v. Moore*, 2 Pick. 386 ; *St.* 1786, c. 67, § 4, 5 ; *St.* 1802, c. 135, § 1, 2 ; *St.* 1818, c. 121 ; Anc. Charters, &c. 127, 269, 505 ; Revised Stat. c. 15, § 86, and c. 24, § 32, 35, 54. *et*

Valentine
v.
Boston.

*seq.* ; *St.* 1821, *c.* 109, § 8 ; *Parks* v. *Boston*, 15 Pick. 198 ; *St.* 1799, *c.* 31, § 3 ; *St.* 1804, *c.* 73.

*Osgood*, for the complainants, contended that the appeal lay, by virtue of Revised Stat. *c.* 82, § 6, upon the ground that " the title to real estate is concerned." Co. Lit. 285*a* ; 1 Com. Dig. (Day's edit.) 210, *Action* ; Revised Stat. *c.* 82, § 4 ; *Plympton* v. *Baker*, 10 Pick. 473 ; *Blood* v. *Kemp*, 4 Pick. 169, 173 ; *Commonwealth* v. *Messenger*, 4 Mass. R. 468 ; that if the case depends upon *St.* 1821, *c.* 109, § 8, 11, the plaintiffs 'still had a right of appeal by virtue of *St.* 1835, *c.* 102, § 1, 2.

*April 6th.*

MORTON J. delivered the opinion of the Court. The mayor and aldermen of the city of Boston, who have there the same powers in relation to the laying out of highways, which in other counties are vested in the county commissioners, laid out a street over land belonging to the complainants. *St.* 1821, *c.* 109, § 11. The owners, according to a provision peculiar to this county, applied to the Court of Common Pleas for a jury to estimate the damages at the bar of that court. This having been done, and the verdict not being satisfactory to the complainants, they claimed an appeal to this court. The respondents' counsel move to have the appeal dismissed, upon the ground that an appeal does not lie in such cases. And we are now to determine whether as a matter of right the complainants are entitled to another trial by jury and in this court.

This question depends entirely upon the construction of the several statutes regulating the subject. An appeal as understood in this Commonwealth, is unknown to the common law.

The claim of the appeal is founded upon the 6th section of the 82d chapter of the Revised Statutes. Although the act complained of was done and the process was pending before these statutes were enacted, yet we have no doubt that the proceedings in court must be governed by them. Revised Stat. *c.* 146, § 5.

The 6th section of the 82d chapter gives an appeal in any personal action wherein the *ad damnum* exceeds one hundred dollars, and also in any of the *actions before mentioned*, in

Valentine
v.
Boston.

which the title to real estate *may* be concerned. It is agreed that a case of this kind necessarily involves the title to real estate, because the complainant is always bound to show that he is owner of the property taken, before he can obtain a verdict of a jury assessing his damages. The 32d section of the 24th chapter expressly authorizes the jury " to hear and determine the complainant's right and interest to the estate taken, whenever the same shall be drawn in question, so far as may be necessary to assess the damages." And the record in this case shows that the title to the estate claimed by the complainants not only *might have been,* but actually *was* drawn in question, and that some portion of the damages claimed was rejected upon the decision of this question against them.

But if the complainants are right in this position, it does not necessarily follow that they are entitled to their appeal. To bring the case within the 6th section they must show not only that the title to real estate is involved, but also that it is one of the " actions " therein " *before mentioned.*" These are named in the 4th section of the 82d chapter, which limits the jurisdiction of the Court of Common Pleas, and are real actions, trespass quare clausum fregit, case for the disturbance of an easement " and *all other actions* in which the title to real estate may be concerned."

It is contended by the complainants' counsel, that these terms are broad enough to include the case under consideration. " An action " is defined to be " a lawful demand of a man's right." Co. Lit. 285a. This may be a good general definition ; but it comprehends more than was meant by the word in this section. It is unquestionably here used with some limitations, and clearly does not include *militia cases,* *bastardy cases,* the *assessment of damages under the mill acts,* nor the *assessment of damages* for laying out highways in the country. Other exceptions might also be added.

All the actions enumerated are common law actions. The maxim of *noscitur a sociis,* which is a pretty safe guide in the construction of doubtful language, seems applicable. If all the actions specifically named are according to the course of the common law, it raises a fair inference that the " other ac

tions " were intended to be of the same description. And this construction is confirmed by the subsequent provisions of the same section. The legislature intended to give an appeal from all decisions upon questions of law. And if they had supposed that the term *action*, which had been so often before used in the same statute, would have included *all cases whatever*, they would not have added other words. Where language is used with so much accuracy and precision as it is in our Revised Statutes, it may fairly be inferred, that the same words, wherever they occur, mean the same thing ; and that a change of language would not be adopted unless a change of sense was intended. But in this provision they have changed the phraseology and used broader language, giving an appeal " in any *civil action, suit or proceeding whatever*, when the judgment or decision therein is founded on matter of law." We are therefore of opinion, that the civil actions in which an appeal is given in the 6th section, are common law actions. Where any special proceedings are authorized, as in the acts in relation to mills and highways, the statute which provides the remedy regulates the mode of conducting the proceedings.

A recurrence to the history of the legislation and judicial practice in relation to the laying out of highways, will corroborate our view of the question. This subject has always been within the jurisdiction of the Court of General Sessions, and their successors, the several tribunals to which at different times it has been transferred. But no trial by jury at the bar of that court was ever authorized. No interposition of a jury was ever allowed, except in the country, for the purpose of reëstimating the damages and revising in part the location of the way. But even in this, nothing in the nature of appeal which gave a second trial by jury, in court or in the country, was ever authorized.

Nor have the Revised Statutes made any alteration in this respect, in the other parts of the Commonwealth. The application for a jury must be made to the county commissioners ; *ch.* 24, § 13 ; and they must decide upon it. § 14. But the verdict of the jury must be returned to the Court of Common Pleas, who are to review and adjudicate upon it, and set it aside if in their opinion there is good cause for so doing

Valentine
*v.*
Boston.

§ 34. If the verdict be set aside or the proceedings quashed, a new jury may be ordered and new proceedings had, until a valid verdict be returned and recorded. § 35. No appeal however is provided for. But on the contrary, in the 37th section it is expressly enacted, " That the verdict of the jury, returned to the Court of Common Pleas as before provided, and by them accepted and recorded, shall be conclusive upon the parties."

We do not believe that an appeal was intended to be given in this county in cases where it was not given in the other counties. Although some peculiar regulations adapted to the localities of this city and which have proved convenient and beneficial in practice, are provided, yet no substantial difference was intended to be made between Suffolk and the other counties. If the inhabitants of this city, from their proximity to the court-house, obtain the advantage of having their damages assessed by a jury under the direction of the Court of Common Pleas, it certainly furnishes no reason why they also should be allowed an appeal and another trial before this Court.

The statute which authorized a trial at the bar of the Common Pleas contemplated no other difference in the course of proceedings, between the country and this city. The 57th section provides, that " the like proceedings shall be had in the estimation of damages, the returning of the verdict and the adjudication of the court thereon, as are in this chapter required to be had on verdicts, in the like cases, returned to the Court of Common Pleas in other counties" ; thus placing a verdict found in the Common Pleas, on the same ground, in every respect, as a verdict returned to that court by a jury in the country. From such a verdict no appeal lay. And we are of opinion that no appeal lies from a verdict in such case taken before the Common Pleas in this county.

Several other questions were discussed, upon which we do not think it necessary to give an opinion.

*Appeal dismissed.*